[No. B056090. Second Dist., Div. Six. May 17, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
CATHERINE JEAN GARZIANO et al., Defendants and Appellants.

## COUNSEL

Robert D. Silver for Defendants and Appellants.

Michael D. Bradbury, District Attorney, and Michael D. Schwartz, Deputy District Attorney, for Plaintiff and Respondent.

## OPINION

ABBE, J.*—May persons who commit crimes while demonstrating at a medical clinic that provides abortions, among other things, to its patients, escape criminal responsibility by invoking the defense of necessity? No.

The three appellants in this case were found by a jury to have engaged in criminal conduct while participating in such a demonstration at a family planning clinic. Appellants and their fellow demonstrators were successful in preventing the clinic from conducting its normal business during the demonstration.

■ Each appellant testified that his or her conduct was aimed at preventing any woman from obtaining an abortion. They claim their moral convictions on the subject of abortion justify their criminal behavior. Their avowed purpose was to impose their beliefs on all others and to interfere with any pregnant woman's right to make her own decision on whether to interrupt the pregnancy no matter at what stage of the pregnancy. The position appellants take is that they may commit crimes with impunity because of the moral correctness of their convictions about abortion. We disagree.

When a person commits a criminal offense, he or she must suffer the penal consequences. A rare exception to this principle arises under the court created defense of necessity. However, the defense of necessity has no application to abortion protesters who commit crimes to achieve their stated goal of preventing all abortions.

The necessity defense has been recognized in appellate court decisions in California despite the absence of any statutory articulation of this defense and rulings from the California Supreme Court that the common law is not a part of the criminal law in California. (See, e.g., *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 632 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)

---

*Retired Associate Justice of the Court of Appeal, Second District, sitting under assignment by the Chairperson of the Judicial Council.

In *People* v. *Lovercamp* (1974) 43 Cal.App.3d 823, 831-832 [118 Cal.Rptr. 110], the court applied the doctrine of necessity to a prison escape case. Among the stringent rules required for the application of the defense of necessity in a prison escape case are: the prisoner must be faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future; there is no time for a complaint to the authorities or there exists a history of futile complaints which make any right of making such complaints illusory; there is no time or opportunity to resort to the courts; there is no evidence of force or violence used toward prison personnel or other "innocent" persons in the escape; and the prisoner immediately reports to the proper authority when he has obtained a position of safety from the immediate threat.

In *People* v. *Pena* (1983) 149 Cal.App.3d Supp. 14 [197 Cal.Rptr. 264], the court discussed the defense of necessity as it applied outside a prison escape setting. In such a setting, the court held: "1. The act charged as criminal must have been done to prevent a significant evil; [¶] 2. There must have been no adequate alternative to the commission of the act; [¶] 3. The harm caused by the act must not be disproportionate to the harm avoided; [¶] 4. The accused must entertain a good-faith belief that his act was necessary to prevent a greater harm; [¶] 5. Such belief must be objectively reasonable under all the circumstances; and [¶] 6. the accused must not have substantially contributed to the creation of the emergency." (*Id.*, at pp. Supp. 25-26, fns. omitted.)

We consider the *Pena* court's articulation of the factors in the defense of necessity to be excessively expansive. However, even under the broad standards of *Pena*, appellants, as a matter of law, were not entitled to have the jury instructed on the defense of necessity. There is no justification for appellants to commit crimes for the purpose of interfering with the exercise by others of their constitutional rights.

The California Supreme Court in *People* v. *Belous* (1969) 71 Cal.2d 954 [80 Cal.Rptr. 354, 458 P.2d 194], held that it is a woman's fundamental right to choose whether to bear children based upon her right of privacy in matters relating to marriage, family and sex. This right of privacy protecting a woman's right to choose existed even prior to it being enumerated in the California Constitution.

In 1972, the people of the State of California added the right to "privacy" to the other inalienable rights of individuals enumerated in article I, section 1 of the California Constitution. Under this constitutional section, the state has no authority to prohibit women from exercising their right to make procreative choices as they see fit. (*Committee to Defend Reproductive Rights*

v. *Myers* (1981) 29 Cal.3d 252, 263 [172 Cal.Rptr. 866, 625 P.2d 779, 20 A.L.R.4th 1118].)

In *Roe* v. *Wade* (1973) 410 U.S. 113, 153 [35 L.Ed.2d 147, 177, 93 S.Ct. 705], the United States Supreme Court held that the right of privacy, ". . . whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, as we feel it is, or as the District Court determined, in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." The United States Supreme Court has defined a woman's right to choose as an aspect of the privacy right in very explicit terms: "If the right of privacy means anything, it is the right of the *individual* . . . to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." (*Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 453 [31 L.Ed.2d 349, 362, 92 S.Ct. 1029].) The constitutional right of privacy is ". . . clearly among the most intimate and fundamental of all constitutional rights." (*Committee to Defend Reproductive Rights* v. *Myers, supra*, 29 Cal.3d at p. 275.)

Appellants may not criminally interfere with the exercise of constitutional rights by others, and then escape punishment for their criminal conduct by asserting the defense of necessity. Those who choose to break the law under such circumstances because of firmly held beliefs must be prepared to suffer the consequences.

A pregnant woman's decision to exercise her right under the Constitutions of the United States and of the State of California to terminate a pregnancy is not and cannot be held to be a "significant evil."

All of appellants' issues on appeal relate to their position of the right to assert the defense of necessity. They have no such right.

The judgments of conviction are affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 1, 1991.